# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

CIERRA KIRSTEN SCHMITH,

    Plaintiff,

vs.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

No. 18-CV-3055-LTS-KEM

**REPORT AND RECOMMENDATION**

_____

Plaintiff Cierra Kirsten Schmith seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Schmith argues that Administrative Law Judge (ALJ), John E. Sandbothe, erred in weighing a treating source medical opinion, in developing the record, and in formulating a hypothetical to the vocational expert (VE). I recommend **affirming** the ALJ's decision.

## I.    BACKGROUND[1]

Schmith protectively filed for SSI benefits on May 8, 2015, alleging disability due to bipolar disorder and depression, attention deficit disorder, anxiety, carpal tunnel syndrome, scoliosis, degenerative disc disease, high blood pressure, pseudotumor cerebri, tendinitis in her feet, and torso tunnel syndrome. AR 72, 92-93, 105. Her application was denied initially in September 2015 and on reconsideration in November

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 17).

2015. AR 103-05, 117-19. Schmith requested review by an ALJ, and an administrative hearing was held by video on August 29, 2017. AR 11, 69. Schmith and a VE testified at the hearing. AR 11, 70. The ALJ issued a written opinion on October 18, 2017, following the familiar five-step process outlined in the regulations[2] in determining Schmith was not disabled from the date she filed her application through the date of the decision. AR 11-22. At steps one and two, the ALJ found that Schmith had not engaged in substantial gainful activity since her application date and that she suffered from the following severe impairments: depression, attention deficit hyperactivity disorder (ADHD), obesity, and lower back pain. AR 13-14. The ALJ determined at step three that Schmith's impairments (neither singly nor in combination) met or medically equaled the severity of a listed impairment. AR 14-16. To determine Schmith's ability to perform past work (at step four) and other work (at step five), the ALJ determined Schmith's residual functional capacity (RFC)[3]:

> [T]he claimant has the [RFC] to perform light work . . . except the claimant can lift up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk up to 6 hours. The claimant can occasionally balance, stoop, crouch, kneel, crawl, or climb. The claimant is able to do only simple, routine work. The claimant cannot interact with the public and no fast-paced work requirements.

AR 16.

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. §416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[3] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**).

In determining Schmith's mental[4] RFC, the ALJ considered Schmith's statements and testimony; treatment records; an opinion from consultative examiner Carroll D. Roland, PhD (assigning some weight to this opinion as vague, conclusory, and lacking a function-by-function assessment); opinions from nonexamining state-agency consultants Aaron Quinn, PhD, and Myrna Tashner, EdD (giving them some weight because the overall record showed Schmith was less limited in her activities of daily living than the consultants opined); opinions from Schmith's treating psychologist, Margaret Phillips, PhD (giving the opinions little weight as unsupported by the record and inconsistent with treatment notes); and Schmith's Global Assessment of Functioning (GAF) scores. AR 16-20. The ALJ found Schmith was unable to perform past relevant work as a fast food worker or customer service representative. AR 20-21. Based on VE testimony and Schmith's age, education, work experience, and RFC, the ALJ found Schmith could perform other work that exists in significant numbers in the national economy, including garment sorter, mail clerk, and marker (all unskilled work). AR 21-22. Accordingly, the ALJ found Schmith was not disabled. AR 22.

The Appeals Council denied Schmith's request for review on June 26, 2018 (AR 1), making the ALJ's decision that Schmith was not disabled the final decision of the Commissioner. *See* **20 C.F.R. § 416.1481**. Schmith filed a timely complaint in this court (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 25, 27), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

---

[4] Schmith only challenges the ALJ's mental RFC determination. Thus, I do not address the physical RFC determination.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Schmith challenges the ALJ's mental RFC determination, arguing the ALJ erred by giving only little weight to Dr. Phillips's opinions and by failing to develop the record by allowing Dr. Phillips to clarify any inconsistencies in the record. Based on those alleged errors, Schmith argues the ALJ's hypothetical posed to the VE was flawed and thus, the VE's testimony does not provide substantial support for the ALJ's findings.

### A. *Weight Assigned to Treating-Source Opinions*

Schmith argues the ALJ erred in assigning little weight to the opinions from Dr. Phillips, Schmith's treating psychologist. Doc. 25 at 8-9. Schmith saw Dr. Phillips with WellSource[5] for individual therapy a total of fifteen times from October 2015 to March 2017 (six visits from October to December 2015, six visits from February to July 2016, two visits in November and December 2016, and one visit in March 2017). AR 376-88; 487-501. Dr. Phillips completed a Certification of Disability for Shelter + Care Program

---

[5] Schmith also received medication management at WellSource from Judy Johnson, ANRP (in October, November, and December 2015; and January, March, April, August, and October 2016), and Andrew Stowell, PA-C (in April and June 2017). AR 373-75, 502-28.

("Certification") in December 2015 (AR 394-97) and a Medical Source Statement of Ability to Do Work-Related Activities (Mental) ("MSS") on July 19, 2017 (also signed by Andrew Stowell, PA-C, on August 28, 2017) (AR 819-21). In the Certification, Dr. Phillips checked boxes indicating that Schmith had a long-term, serious mental illness that "substantially impedes" her ability to live independently, and that she had a severe chronic disability that resulted in "substantial functional limitations" in the areas of self-care, learning, mobility, self-direction, and economic self-sufficiency (but not independent living). AR 394. Dr. Phillips provided no additional information about Schmith's functional abilities and limitations in the Certification. In the MSS check-box form, Dr. Phillips found Schmith had the following limitations in the listed areas of functioning:

| Functional Ability | Mild limitation | Moderate limitation | Marked limitation |
|---|---|---|---|
| Understand/remember short, simple instructions | | X | |
| Carry out short, simple instructions | | X | |
| Understand/remember detailed instructions | | | X |
| Carry out detailed instructions | | | X |
| Make judgments on simple work-related decisions | | X | |
| Interact appropriately with the public | X | | |
| Interact appropriately with supervisors | X | | |
| Interact appropriately with co-workers | X | | |
| Respond appropriately to work pressures | | X | |
| Respond appropriately to changes in routine | | X | |
| Respond appropriately to conflict | | X (moderate to marked) | |

AR 819-20. Dr. Phillips elaborated that Schmith's ADHD caused her to be distracted easily and caused issues with memory, concentration, and focus, and that her anxiety also contributed to these difficulties. AR 819. Dr. Phillips also noted that Schmith's trauma history caused struggles in her relationships with others, with being flexible when stressed or threatened, and with appropriate decision-making when conflict is present. AR 820. Dr. Phillips found Schmith is capable of managing benefits. AR 821. The form provided no other information about Schmith's diagnoses or the basis for Dr. Phillip's conclusions.

When determining a claimant's RFC, the ALJ considers "medical opinions . . . together with the rest of the relevant evidence." **20 C.F.R. § 416.927(b)**. "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* **20 C.F.R. § 416.927(c)(2)**. "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (alteration in original) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Id*.

The ALJ assigned little weight to Dr. Phillips's Certification from 2015 and the MSS from 2017 because they were not supported by the record and were inconsistent with treatment records. AR 19. In his decision, the ALJ summarized Schmith's treatment records and noted that she generally had examinations within normal limits (including "intact memory and concentration, good judgment and insight, linear and goal directed thought processes, and was oriented to time, place, person and situation with an appropriate mood and affect"). AR 17-18. Substantial evidence supports this finding. Treatment records from WellSource (including from Dr. Phillips) show that although

6

Schmith often had a dysthymic or anxious mood and congruent affect during examinations (AR 376, 388, 488, 492-93, 496, 497-98, 500, 504, 506-07, 515, 518, 525), her mood improved at times (AR 490-91, 494, 502, 509, 512-13, 518, 521). During these examinations, Schmith was fully oriented and often actively engaged, and she had normal thought processes, intact memory, fair to good insight and judgment, and good impulse control. AR 374, 376, 488-98, 502-07, 509, 512, 515, 518, 521, 525, 527; *but see* AR 377 (issues with concentration and racing thoughts apparent during October 2015 intake session), AR 487 (Dr. Phillips noted Schmith's difficulty focusing during March 2017 session). An ALJ may decline to give controlling weight to a treating-source opinion based on inconsistencies with the provider's treatment notes. *See Hamilton v. Astrue*, 518 F.3d 607, 610-11 (8th Cir. 2008).

Records from other treatment providers similarly showed normal examination results. AR 304, 308, 536, 651, 659, 674, 687, 699, 705, 709, 714, 721, 734, 739, 744, 753, 762, 775, 784, 790 (cooperative, oriented, appropriate mood and affect noted by other providers during physical examinations from May 2015 to June 2017); AR 475 (Schmith was cooperative, oriented and alert, and had direct eye contact, normal speech, and intact memory during December 2016 exam); AR 369-70 (consultative examiner noted cooperative attitude, normal eye contact, full orientation, intact attention and concentration, linear and goal-directed thought processes, intact memory, normal speech, and intact to fair judgment (but poor insight) during August 2015 consultative exam); AR 361 (Schmith was alert, cooperative, oriented, "able to use decision making strategies" and memory, able to direct attention and read during physical consultative exam in July 2015). "[M]ultiple mental status examinations . . . reveal[ing] no abnormalities," in which the claimant is "repeatedly noted to be alert and oriented with normal speech and thought processes" are inconsistent with findings of extreme limitations. *Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010).

7

The ALJ also noted records reflected improvements in Schmith's mood. AR 17. Treatment records show that at times, Schmith experienced depressive symptoms and issues with memory and concentration despite taking medications. AR 478, 511, 525. Overall, however, medications improved Schmith's symptoms. AR 520-22 (January 2016: Schmith reported doing better and provider noted improvement since the last visit); AR 748 (February 2016: symptoms stable and improved, and Schmith denied depression and "report[ed] functioning as not difficult at all"); AR 517-19 (March 2016: medications helpful and improvement noted since medication changed at last visit); AR 511-13 (August 2016: medications helping anxiety and mood symptoms, not feeling depressed, only occasionally taking anxiety medication, and improvement noted since last appointment); AR 508-10 (October 2016: reported being able to stay on task and follow directions with improved memory, and that medication was "working well"; provider noted medication was "helping with focus, attention, concentration"); AR 478 (November 2016: reported medications working effectively except for ADHD medication); AR 489 (December 2016: reported medication had been helpful); AR 669, 672 (March 2017: denied feeling anxious or depressed, and denied having impaired memory); AR 504-06 (April 2017: reported being more forgetful when not taking medication, and no complaints other than decreased energy when medication taken in the morning); AR 502 (June 2017: reported mood swings but decreased anxiety; also had improvement in focus and memory, and being less easily distracted with medication). These portions of the treatment records further support the ALJ's finding of inconsistency between Dr. Phillips's opinions and the record.

The ALJ also found, based on treatment notes, that Schmith was *more* limited in her ability to interact with others than Dr. Phillips listed in the MSS. AR 19. Schmith does not take issue with these limitations, and they further support the ALJ's conclusion that Dr. Phillips's opinions were inconsistent with treatment records.

8

Schmith argues[6] the ALJ had to "provide more than a conclusory reason" for discounting Dr. Phillips's opinions. Doc. 25 at 9. "[A]n ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). The ALJ here outlined the treatment records (AR 17-19), which support his conclusion that Dr. Phillips's opinions were inconsistent with the record. An ALJ may discount a medical opinion if it is "inconsistent with . . . evidence on the record as a whole," even if other factors weigh in favor of crediting the opinion, such as the fact that it was issued by a treating source. *Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003); *see also Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) ("ALJ may give a treating doctor's opinion limited weight if it provides conclusory statements only or is inconsistent with the record.") (citations omitted); *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (opinions from treating sources may be "given less weight if they are inconsistent with the record as a whole"). Here, the ALJ explained he discounted Dr. Phillips's opinions because they were not supported by the record and were inconsistent with treatment notes. AR 17-19. This was a good reason for discounting the opinions. Although Schmith disagrees with the ALJ's conclusion, I find it is supported by substantial evidence as discussed above.

Schmith also contends the ALJ could not discount Dr. Phillips's opinions because they were only contradicted by opinions from nonexamining state agency consultants, and such opinions do not constitute substantial evidence to support the ALJ's decision.

---

[6] Schmith also asserts the record supports finding that Dr. Phillips had a treating relationship with Schmith, that Schmith suffered from severe mental health issues and struggled during the relevant period, and that Schmith provided unquestionable information to Dr. Phillips. Schmith does not elaborate on the first two points, and it appears the ALJ did consider Dr. Phillips to be a treating source and found Schmith suffered from severe mental health issues during the relevant period (indeed, the ALJ found at step two that Schmith's depression and ADHD constituted severe impairments and the ALJ included RFC limitations based on those impairments). As for information Schmith provided to Dr. Phillips, the ALJ considered the treatment records as a whole, including Schmith's statements reflected therein, which (as discussed above) support the ALJ's decision to discount Dr. Phillips's opinions.

Doc. 25 at 9. Schmith relies on *Cox v. Barnhart*, 345 F.3d 606 (8th Cir. 2003) and *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). *See* Doc. 25 at 9. As outlined above, and unlike in *Cox*, the record supports that the ALJ properly gave little weight to Dr. Phillips's opinion based on inconsistencies with treatment records. *See* **Brown v. Astrue**, 611 F.3d 941, 952-53 (8th Cir. 2010); *see also* **Cox**, 345 F.3d at 608-10 (finding the record did not support the ALJ's decision to completely disregard the physician's opinion). This case also differs from *Nevland*, in which no treating or examining physician opined about how the claimant's impairments affected his ability to function in the workplace. *See **Nevland***, 204 F.3d at 858.

The state agency consultants, Drs. Quinn and Tashner, found Schmith was only moderately limited in her ability to understand, remember, and carry out detailed instructions. AR 100, 114; *see* AR 819 (Dr. Phillips found Schmith had marked limitations in these areas). Drs. Quinn and Tashner also found Schmith had moderate limitations in her ability to pay attention and concentrate, to interact with the public and coworkers, to work in close proximity and coordination with others, and to respond appropriately to changes in workplace routine. AR 100-01, 114-15; *see also* AR 819 (Dr. Phillips noted Schmith was easily distracted and had issues with concentration and focus), AR 820 (Dr. Phillips found Schmith only mildly limited in her ability to interact with the public, supervisors, and coworkers). The ALJ gave some weight to Dr. Quinn's and Dr. Tashner's opinions, finding that they were based on a review of the medical evidence but that Schmith was not as limited in her activities of daily living as Drs. Quinn and Tashner found. The ALJ also discussed and gave some weight to the opinion of consultative examiner, Dr. Roland. AR 18, 366-70. Dr. Roland listed generally normal results from Schmith's mental status exam, and she concluded that Schmith's physical limitations might prevent her from working but made no function-by-function findings of mental limitations. AR 369-70. The ALJ's RFC determination limited Schmith to simple and routine work with no fast-paced work requirements. AR 16. The ALJ's RFC

limitations appear consistent with the opinions from Drs. Quinn and Tashner and the findings of Dr. Roland. The ALJ also limited Schmith's RFC to having no interaction with the public (AR 16), a greater limitation than Dr. Phillips included in her opinions (but less limited than the opinions of Drs. Quinn and Tashner).[7] Because the ALJ provided a good reason for discounting Dr. Phillips's opinions, he could rely on the state agency consultants' opinions. *See* **Vance v. Berryhill**, 860 F.3d 1114, 1120-21 (8th Cir. 2017) (holding that when the ALJ gives a good reason for discounting a treating physician's opinion, the ALJ may give greater weight to and "rely instead on the opinions of the state agency medical consultants," as long as those opinions are "more consistent with the medical evidence"); *see also* **Ponder v. Colvin**, 770 F.3d 1190, 1194-95 (8th Cir. 2014) (concluding that the treating physician's RFC opinion "cannot trump" three non-examining consultants' opinions "solely because he was [claimant's] primary care physician" when his opinion was inconsistent with other evidence, including treatment records).

The ALJ provided a good reason, supported by the record, for giving little weight to Dr. Phillips's opinions. The ALJ's reliance on the medical opinions in evidence and a review of the treatment records provides substantial evidence for the ALJ's RFC determination. Accordingly, I recommend affirming the weight assigned Dr. Phillips's opinion and the ALJ's mental RFC determination.

---

[7] Treatment records show that Schmith volunteered at a kennel for five hours a day, two to three days per week, from around March 2017 through at least June 2017. AR 487, 489, 494, 502, 508, 511, 514; *see also* AR 491 (reported working two jobs in May 2016, which kept her busy and helped her cope with the loss of a friend). She reported in August 2016 that a lack of focus was causing some issues with her work at the kennel (AR 511) and that she was having issues with a coworker in December 2016 (AR 489). As noted above, medication helped her issues with concentration. There is no other indication that she had issues with coworkers. Overall these records support the ALJ's RFC determination that included no limitation for Schmith's interaction with coworkers and supervisors.

## B. Development of the Record

Schmith asserts the ALJ erred by not allowing Dr. Phillips an opportunity to explain any inconsistencies between her opinions and her treatment notes. Doc. 25 at 10-11.[8] Both parties recognize (*see* Doc. 25 at 10, Doc. 27 at 12-13) that an ALJ need not seek clarification unless a crucial issue was undeveloped. *See Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014) (finding no clarification was required when "[t]he ALJ considered numerous medical assessments and records in weighing [the treating physician's] opinion."); *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

As noted in the Commissioner's brief, Schmith cites no authority to support her proposition that the ALJ had to provide Dr. Phillips an opportunity to explain why her MSS was inconsistent with her treatment records. Schmith cited cases for the general proposition that an ALJ had a duty to develop the record. Doc. 25 at 10. The remaining case she relies upon (Doc. 25 at 12) is inapposite—it involved an ALJ's finding, without medical support, that the claimant's impairment did not cause any severe functional limitations. *See Simpson v. Callahan*, 979 F. Supp. 1264, 1268-69 (E.D. Mo. 1997) (noting that although an ALJ could assign weight to (and discount) a medical opinion, the ALJ in that case discounted the psychologist's opinion about severe functional limitations "without invoking any basis in the record," and holding the ALJ could not "render a psychological opinion" that claimant's adjustment disorder caused "'no severe functional limitation'" (quoting *Newman v. Director*, 745 F.2d 1162, 1165 (8th Cir. 1984))).

Here, the ALJ considered treatment records and opinions from the consultative examiner and state agency consultants in weighing Dr. Phillips's opinion. No issue was left undeveloped. Accordingly, I recommend denying Schmith's claim that the ALJ erred in developing the record.

---

[8] The remainder of Schmith's arguments in this section of her brief go to the weight assigned by the ALJ to Dr. Phillips's opinions. Doc. 25 at 11-12.

12

### C. VE Hypothetical

An ALJ bears the burden of proving there are jobs in the national economy the claimant can perform. *See* **Gieseke v. Colvin**, 770 F.3d. 1186, 1189 (8th Cir. 2014); **Goff**, 421 F.3d at 790. "In making this determination, the ALJ may rely on testimony by a VE that is 'based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" *Gieseke*, 770 F.3d at 1189 (quoting **Cox v. Astrue**, 495 F.3d 614, 620 (8th Cir. 2007)). "[T]he ALJ may exclude any alleged impairments that [the ALJ] . . . properly rejected as untrue or unsubstantiated." **Perkins v. Astrue**, 648 F.3d 892, 902 (8th Cir. 2011) (quoting **Hunt v. Massanari**, 250 F.3d 622, 625 (8th Cir. 2001)). Thus, the ALJ's questions to the VE need only reflect those limitations that the ALJ finds are applicable to claimant. *See* **Harwood v. Apfel**, 186 F.3d 1039, 1044 (8th Cir. 1999).

Schmith argues the ALJ erred in relying on the VE's testimony because the ALJ failed to include in the VE hypothetical limitations on Schmith's ability to concentrate, to understand and remember detailed instructions, to carry out detailed instructions, and to handle workplace stressors. Doc. 25 at 13-15. The ALJ limited Schmith to simple, routine work with no fast-paced work requirements. AR. 16. Aside from challenging the weight assigned Dr. Phillips's opinion and development of the record, Schmith did not challenge the ALJ's RFC determination. As discussed above, I find the ALJ properly assessed Dr. Phillips's opinion and the overall record in determining Schmith's RFC. *See also* **Henderson v. Berryhill**, No. 4:15 CV 1624 JMB, 2017 WL 747611, at *8, *10 (E.D. Mo. Feb. 27, 2017) (rejecting claimant's argument that "limiting [p]laintiff to simple, routine work . . . does not sufficiently account for [claimant's] moderate limitations in concentration, persistence, or pace"). The ALJ's hypothetical to the VE reflected the limitations the ALJ included in the RFC determination. AR 16, 89-90. I recommend finding that the ALJ did not err by failing to include additional limitations

related to Schmith's abilities to concentrate; to understand, remember, and carry out detailed instructions; and to handle workplace stressors.

### III. CONCLUSION

I recommend that the district court judge **affirm** the decision of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 19th day of February, 2020.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa